1  **DOLL AMIR & ELEY LLP**
   MICHAEL M. AMIR (SBN 204491)
2  mamir@dollamir.com
   KRISTA HERNANDEZ (SBN 216746)
3  khernandez@dollamir.com
   1888 Century Park East, Suite 1850
4  Los Angeles, California 90067
   Tel: 310.557.9100
5  Fax: 310.557.9101

6  Attorneys for Plaintiff,
   CENTRAL VALLEY MEDICAL GROUP, INC.

7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11  CENTRAL VALLEY MEDICAL         Case No. 1:19-cv-00404-LJO-SKO
    GROUP, INC.,
12                                 *Assigned to Courtroom 4*
              Plaintiffs,          *The Hon. Lawrence J. O'Neill*
13
    v.                             **FIRST AMENDED COMPLAINT**
14
    INDEPENDENT PHYSICIAN            1. **Interference with Contract**
15  ASSOCIATES MEDICAL GROUP,           **(Physicians);**
    INC., DBA ALLCARE IPA,           2. **Interference with Contract**
16                                      **(Members);**
              Defendants.           3. **Interference with Contract**
17                                      **(CareMore);**
                                     4. **Interference with Contract**
18                                      **(Health Plans);**
                                     5. **Interference with**
19                                      **Prospective Economic**
                                        **Advantage (Physicians);**
20                                   6. **Interference with**
                                        **Prospective Economic**
21                                      **Advantage (Members);**
                                     7. **Interference with**
22                                      **Prospective Economic**
                                        **Advantage (CareMore);**
23                                   8. **Interference with**
                                        **Prospective Economic**
24                                      **Advantage (Health Plans);**
                                     9. **Unlawful Business Practices**
25                                      **(Bus. & Prof. Code §17200)**
                                    10. **Unfair Business Practices**
26                                      **(Bus. & Prof. Code §17200**
                                        **et seq.)**
27

28

                              1

**11. Fraudulent Business practices (Bus. & Prof. Code §17200)**

**JURY TRIAL DEMANDED**

Complaint Filed: March 19, 2019
Trial Date:        None

CENTRAL VALLEY MEDICAL GROUP, INC. ("CVMG" or "Plaintiff"), through its counsel of record, hereby complains and alleges with knowledge as to its own conduct and on information and belief as to Defendant and all other persons and entities:

**PARTIES AND VENUE**

1.    Plaintiff CVMG is a professional medical corporation doing business in Stanislaus County.  CVMG is an independent physician association ("IPA"), an organization of independent physicians who contract with health plans such as health maintenance organizations ("HMO").  In simplest terms, health plans contract with an IPA to provide services to the health plan's members on a per member/per month basis. The health plan pays the IPA a fixed sum per member per month (known as "capitation") for each member assigned to the IPA and the IPA becomes responsible for nearly all physician and related services the member might need.

2.    The IPA in turn contract with primary care physicians to create a network for the members assigned to the IPA.  The IPA pays its primary care physician network physicians who provide the actual services according to its contract, typically in either fee for service reimbursements or also in a per member per month arrangement known as "sub-capitation." The IPA's ability to retain the plan member is highly dependent on whether the patient's physician is in the IPA's network.

3.    Defendant Independent Physician Associates Medical Group, Inc. is a corporation doing business in Stanislaus County with its principal place of

FIRST AMENDED COMPLAINT

1  business in Modesto, California. Independent Physician Medical Associates, Inc.

2  does business, lawfully or not, as AllCare IPA (hereafter "ALLCARE" or

3  "Defendant").

4      4.    Venue is proper in this County as the acts complained of arise in the

5  County of Stanislaus and the Defendant's principal place of business is in the County

6  of Stanislaus at 3320 Tully Road, Modesto, California 95350.

7                           **BACKGROUND**

8      5.    Plaintiff hereby realleges and incorporates by this reference each of the

9  preceding paragraphs as if fully set forth herein.

10     6.    ALLCARE's actions as described in this complaint demonstrate that

11 ALLCARE has a business strategy of retaining membership by hook or by crook.  For

12 instance, and as described below, in the case of ALLCARE's soon-to sunset

13 contractual relationship with CareMore Health Plan, ALLCARE sent inaccurate and

14 misleading communications to members in hopes of luring them away from their

15 existing health plan.  In the case of CVMG, ALLCARE's competitor, ALLCARE has,

16 in breach of ALLCARE's own contracts with its physicians, threatened to withhold

17 annual contractual performance bonuses unless the physicians terminate their

18 contracts with CVMG. ALLCARE seeks to maintain membership at all costs and as

19 described in more detail below, ALLCARE has violated California law to do so,

20 causing harm to members, physicians and the community in its "no holds barred"

21 effort to obtain a competitive advantage over CVMG.  ALLCARE's actions offend

22 notions of fair play.

23     7.    CVMG and Defendant are both IPAs doing business in Stanislaus

24 County.  CVMG contracts with health plans on the one hand, and with independent

25 physicians in the community ("Physician Networks") to provide the services, on the

26 other.

27     8.    More specifically, CVMG contracts with independent physicians who

28 provide primary care who are in family medicine, internal medicine or pediatrics

DOLL AMIR & ELEY LLP

("Primary Care Physicians") to build their network of Primary Care Physicians ("Primary Care Physician Network").

9.   CVMG is an IPA and corporation operating in the same geographic region as Defendant and in the same business as Defendant.

10.   Both CVMG and Defendant compete for the same pool of physicians to contract with to build and maintain their respective Physician Networks and Primary Care Physician Networks.

11.   At all relevant times herein, the vast majority of CVMG's Primary Care Physician Network, over 80%, is and has been contracted with ALLCARE.

12.   At all times relevant herein, ALLCARE was aware that CVMG contracted with these physicians in CVMG's Physician Network.

13.   In its contracts with physicians, CVMG does not prohibit any physician from contracting with ALLCARE or any other IPA, i.e., the contracts are not exclusive.

14.   In its contracts with its Provider Network, ALLCARE does not prohibit its contracted physicians from contracting with CVMG or any other competing IPA, i.e., ALLCARE's physician contracts are purportedly not exclusive either.

15.   In its contracts with its Provider Network, ALLCARE reserves the right to request contractual exclusivity with its physicians and to determine additional compensation to its providers for such exclusivity.

16.   Even if ALLCARE requests exclusivity from a physician, the contract between ALLCARE and the physician includes an exception to this exclusivity in the event a physician treats a patient who has a health plan that is not contracted with ALLCARE.  The contract allows a physician who is otherwise exclusively contracted with ALLCARE to, consistent with its "exclusive" contract with ALLCARE, contract with another IPA if that physician provides medical care to patients with a health plan not contracted with ALLCARE but contracted with that other IPA.

17.   Pursuant to its contracts with its Provider Network ALLCARE must

4

1  compensate its physicians for their performance by paying annual contractual
2  performance bonuses to its physicians.

3       18.    CVMG and Defendant also compete for the same contracts with health
4  plans to obtain patient membership.

5       19.    Contracts between an IPA and a health plan typically require that the
6  IPA's physician network remain sufficiently robust.  Health plans are particularly
7  concerned with maintaining an adequate Primary Care Physician Network.

8       20.    As reported on the Department of Managed Health Care's website,
9  ALLCARE is contracted with the following insurance plans:  Aetna Health of
10 California Inc.; Alignment Health Plan; Blue Cross of California; Blue Shield of
11 California Promise Health Plan; California Physicians' Service; CareMore Health
12 Plan; Cigna HealthCare of California, Inc.; Health Net of California, Inc.; Humana
13 Health Plan of California, Inc.; and UHC of California. ALLCARE is also contracted
14 with Golden State Medicare Health Plan.

15      21.    CVMG is contracted with the following insurance plans: Aetna Health of
16 California Inc.; Cigna HealthCare of California, Inc.; Health Net of California, Inc.;
17 and UHC of California.

18      22.    For 2018, CVMG reported to the Department of Managed Health Care
19 that it had 65 total primary care physicians and 195 total specialists, and reported its
20 range of members as between 0 and 4,999 lives in Stanislaus County.

21      23.    For 2018, ALLCARE reported to the Department of Managed Health
22 Care that it had 952 total primary care physicians and 630 total specialists, and
23 reported its range of members as between 40,000 and 49,999 lives in Stanislaus,
24 Merced and San Joaquin counties.

25 **ALLCARE IMPROPERLY INDUCES MEMBERS TO CHANGE HEALTH**
26 **PLANS**

27      24.    As alleged above, CareMore Health Plan ("CareMore") is one of the
28 health plans with whom ALLCARE has contracted.  The contract between CareMore

DOLL AMIR & ELEY LLP

1   and ALLCARE will sunset on December 31, 2019 and CareMore and ALLCARE

2   have not, to date, negotiated an extension to that contract.  As of that date, patients

3   covered by CareMore cannot utilize the ALLCARE physician network, unless their

4   physician is contracted directly with CareMore or with an IPA that is contracted with

5   CareMore (or they have ongoing medical needs requiring some exception). CVMG

6   has not had a contract with CareMore in the past.  CareMore provides health plan

7   coverage to approximately 4,500 Medicare members in Stanislaus County.

8        25.     CareMore desires to contract with individual physicians and/or with an

9   IPA other than ALLCARE in order to maintain a network of physicians available to

10   provide health care services to its members in Stanislaus County.  ALLCARE is or

11   should be aware of CareMore's effort to obtain contracts with other physicians and/or

12   IPAs.  CVMG is one of the IPAs with whom CareMore could contract.  CVMG and

13   CareMore have been in negotiations for a potential contract and expect to fully

14   execute an agreement very soon. As set forth below, to mitigate against the loss of

15   members resulting from the imminent termination of the ALLCARE/CareMore

16   contract (and to prevent CVMG from obtaining the benefit of that membership),

17   ALLCARE has engaged in a fraudulent scheme to mislead members.

18        26.     Specifically, open enrollment for Medicare patients ran from October 15,

19   2018 through December 7, 2018 ("Open Enrollment").

20        27.     During Open Enrollment, ALLCARE prepared and sent letters to

21   approximately 3,000 CareMore members, which letters were sent on the letterhead of

22   ALLCARE contracted physicians ("Plan Switch Letters").  ALLCARE sent these

23   Plan Switch Letters to the CareMore members by U.S. Mail, overnight mail and/or

24   certified mail, and some members received more than one copy of the same Plan

25   Switch Letter by different delivery methods.

26        28.     ALLCARE's Plan Switch Letters informed the CareMore members that

27   "[t]his is an important message about possible changes to your health plan."  The Plan

28   Switch Letters notified CareMore members that "[i]n the foreseeable future I [the

DOLL AMIR & ELEY LLP

1    member's physician] may no longer be contracted with CareMore Health Plan

2    through AllCare, and may not be able to care for you under your CareMore Plan" and

3    that "I take your care and selection of Medicare Advantage health plans seriously and

4    want you to have all the information available to ensure continued access to me as

5    your Primary Care Physician."  The Plan Switch Letters suggested that the member

6    contact HealthMarkets to "help you compare your Medicare Advantage health plan

7    options and to keep me as your physician."

8        29.    The Plan Switch Letters do not provide a date by which CareMore is no

9    longer contracted with ALLCARE, contrary to the requirements of Health and Safety

10   Code § 1373.65; 28 Cal. Code of Reg. § 1300.67.1.3; Department of Health Care

11   Services All Plan Letter 16-001.  The Plan Switch Letters do not inform the members

12   that the contract between ALLCARE and CareMore is in force until December 31,

13   2019, more than a year after the Plan Switch Letters were sent.  Because the Plan

14   Switch Letters contain language implying urgency and serious concern, were sent in a

15   manner communicating seriousness and urgency (overnight mail/certified mail) and

16   do not provide a date by which CareMore will no longer be contracted with

17   ALLCARE, the Plan Switch Letters created a false impression that members needed

18   to make an immediate change before the end of Open Enrollment on December 7,

19   2018.

20       30.    The Plan Switch Letters did not include "the following statement in not

21   less than 8-point type:

22       'If you have been receiving care from a health care provider, you may have a

23       right to keep your provider for a designated time period. Please contact your

24       HMO's customer service department, and if you have further questions, you are

25       encouraged to contact the Department of Managed Health Care, which protects

26       HMO consumers, by telephone at its toll-free number, 1-888-HMO-2219, or at

27       a TDD number for the deaf or hard of hearing at 1-877-688-9891, or online at

28       www.hmohelp.ca.gov.'"

DOLL AMIR & ELEY LLP

California Health and Safety Code section 1673.65(f) requires that "[a] health care service plan and a provider…include [the above language] in all written, printed, or electronic communications sent to an enrollee that concern the contract termination or block transfer" of patients.

31.   These Plan Switch Letters to patients were inaccurate and misleading, and inconsistent with statutory requirements for communications with Medicare health plan members.

32.   ALLCARE knew that such Plan Switch Letters to patients were inaccurate and misleading.

33.   ALLCARE sent the Plan Switch Letters with the intention of inducing patients covered by CareMore to switch health plans away from CareMore (and by extension other IPAs including CVMG).

34.   ALLCARE intended for the patients receiving the Plan Switch Letters to rely upon the Plan Switch Letters to alter their choice of health plan during the open enrollment period for 2018 so as to continue to receive treatment from their primary care physician. ALLCARE intended for the patients to have a mistaken impression that they were in imminent danger of being unable to receive care from their existing doctor unless they made an immediate change to their existing health plan away from CareMore.

35.   As reported in the Modesto Bee on December 8, 2018, patients were confused and upset by the Plan Switch Letters. *See* Modesto Bee Article entitled "Local seniors upset about health insurance letters. Here's what you need to know" which can be found at https://www.modbee.com/news/article222766830.html.  These letters "suggested that patients enroll in another health plan or they may lose access to their doctors." *Id.* Those letters reportedly "stirred confusion" amongst the patient population, as the letters did not include the contract expiration date – December 31, 2019 – and "[m]any patients thought they were up against Friday's [2018] enrollment deadline for making coverage changes for 2019." *Id.* These letters resulted in

1 | complaints made to the Stanislaus County's Health Insurance Counseling and
2 | Advocacy Program ("HICAP") office and caused distress to patients ("Some seniors
3 | who took their questions to CareMore were in tears."). *Id.*

4 | 36.    The patients receiving the Plan Switch Letters were justified in relying
5 | upon those letters.

6 | 37.    ALLCARE's Plan Switch Letters were specifically sent in order to
7 | capture member lives for ALLCARE during the critical Open Enrollment period, to
8 | the detriment of CareMore and any IPA who contracts with CareMore in the future,
9 | such as CVMG.  This tactic was engaged in by ALLCARE to either:

10 |          a.  Cause such significant harm to CareMore by the unnecessary and
11 |              premature switch of its members to a new health plan that
12 |              CareMore would be compelled to extend its prior contract with
13 |              ALLCARE, thus foreclosing a future contract between CareMore
14 |              and another IPA such as CVMG; or
15 |          b.  Cause a significant impact to the value of a future contract with
16 |              CareMore to the detriment of any IPA with whom CareMore
17 |              contracts, such as CVMG.

18 | 38.    A significant percentage of CareMore members switched plans during
19 | the 2018 open enrollment period due to the inaccurate and misleading Plan Switch
20 | Letters.  CareMore and any IPA with whom CareMore contracts in the future, such as
21 | CVMG, have been damaged by ALLCARE's transmission of these inaccurate and
22 | misleading Plan Switch Letters.

23 | **ALLCARE DEMANDS PHYSICIAN EXCLUSIVITY**

24 | 39.    As set forth below, ALLCARE has engaged in additional wrongful
25 | conduct that is intended to mitigate against the loss of members.

26 | 40.    In or about February or March 2019, Defendant ALLCARE paid its
27 | physicians their annual contractual performance bonuses for their performance in
28 | 2018.

DOLL AMIR & ELEY LLP

DOLL AMIR & ELEY LLP

41.    Beginning on or about February or March 2019, Defendant ALLCARE, through its agents and officers including its President, Matthew Coury, told physicians who are affiliated with both Defendant and CVMG that Defendant would not pay any further annual contractual performance bonuses to physicians who were also affiliated with CVMG.  For a physician to continue to receive their annual contractual performance bonus, the physician was required to terminate their contract with CVMG.

42.    Thus, any physician who did not terminate their contract with CVMG would not be paid their annual contractual performance bonuses for their performance in 2019.

43.    ALLCARE continues to demand that all of its physicians, even those physicians who continue to be contracted with CVMG, meet all required performance targets.  Thus, ALLCARE has communicated to its physicians that ALLCARE will penalize non-exclusive CVMG-contracted physicians by refusing to pay the contractually mandated performance bonuses.  Non-exclusive CVMG-contracted physicians will not be paid for meeting their performance targets in breach of ALLCARE's contract with the physicians.

44.    ALLCARE also promised to compensate certain physicians who terminated their contracts with CVMG to make up for the loss of business and money suffered by those physicians as a result of the termination of their contract with CVMG.

45.    ALLCARE demanded that the physicians decide whether or not to terminate their contracts with CVMG prior to a deadline of April 20, 2019 and refused to grant extensions to that time frame.  Prior to the April 20, 2019 "exclusivity" deadline set by ALLCARE, ALLCARE repeatedly contacted physicians to inquire as to their intent to terminate or not terminate the contract by that deadline. Physicians were pressured by ALLCARE and its agents to terminate their contracts with CVMG and had a resulting fear that their livelihoods were at risk if they opted

10

DOLL AMIR & ELEY LLP

1   not to terminate their contracts with CVMG. ALLCARE and/or its agents also

2   disparaged and defamed CVMG by communicating to physicians and medical

3   providers that CVMG would no longer be in existence as of July 2019.

4         46.    ALLCARE's demand for exclusivity from its physicians was intended

5   to harm CVMG by reducing its Primary Care Physician network and correspondingly

6   reducing its total number of members. Such actions were intended to harm CVMG

7   by among other things by reducing CVMG's physician network to such a degree as to

8   render CVMG unsuitable as a contractual partner of CareMore and other health plans.

9                          **HARM TO CVMG**

10       47.    Since the time of CVMG's actions, Primary Care Physicians contracted

11   with CVMG have notified CVMG of their intent to terminate their contracts with

12   CVMG. These Primary Care Physicians terminated their contracts with CVMG as a

13   direct result of ALLCARE's actions and to avoid significant negative financial

14   impacts. Approximately 60% of the Primary Care Physicians previously contracted

15   with CVMG terminated their contracts with CVMG because of the actions of

16   ALLCARE.

17       48.    Since ALLCARE began pressuring physicians to terminate their

18   contracts with CVMG, CVMG's membership has decreased significantly. In

19   February 2019, CVMG had a total of 2,804 members. In June 2019, CVMG had a

20   total of 2,078. In a matter of months, CVMG's membership has decreased by 25%.

21   The decrease in membership for members covered by Medicare is even greater, with a

22   29% decrease in Medicare members from February through June 2019. CVMG

23   anticipates that these decreases in membership will continue as contract terminations

24   become operative.

25       49.    Since the time of ALLCARE's actions, CVMG's network adequacy

26   levels have also decreased. To determine network adequacy, health plans look at the

27   percentage of physicians who are open to accept new patients. If the percentage of

28   "open" physicians decreases below a certain percentage, CVMG could be in danger

DOLL AMIR & ELEY LLP

1  of losing and/or experiencing modifications to its contracts with health plans and/or

2  could be unable to contract with health plans in the future. As a result of the large

3  number of physicians who have terminated their contracts with CVMG, a large

4  number of patients have transferred to new physicians who are still within the CVMG

5  network. This influx of patients to the smaller number of CVMG physicians could

6  cause some CVMG physicians to "close" to new patients thereby decreasing

7  CVMG's network adequacy.

8    50.    Network adequacy issues also impact CVMG's ability to negotiate new

9  contracts with health plans. CVMG has been engaged in confidential negotiations

10  with health plans, which negotiations have been impacted by the loss of

11  approximately 60% of CVMG's primary care network.

12    51.    In the event that CVMG contracts with CareMore, the total member lives

13  covered by that contract will be lower than before ALLCARE sent the inaccurate and

14  misleading Plan Switch Letters.

15    **RESULTING HARM TO HEALTHCARE CONSUMERS**

16    52.    Patients are impacted by termination of the contract between their

17  primary care physician and their IPA. After termination, patients face the choice to

18  remain with their physician and change IPAs, or to remain with the IPA and be re-

19  assigned to a new physician. In the event that the patient opts to change primary care

20  physicians, their existing medical records will need to be transferred to the new

21  physician. In some cases, patients may need to change physicians more than once

22  before they identify a physician with whom they are comfortable. Perhaps most

23  critically, patient relationships with existing physicians are disrupted and the patient

24  must develop a new relationship with a new physician who is not aware of the

25  patient's history.

26    53.    In some cases, to ensure that their care is covered by their health

27  insurance, a patient may have to change physicians whether they want to or not. If

28  the patient's current health plan is not contracted with their physician's IPA, the

1  patient must either change physicians, change their health plan or pay for their visits

2  out of pocket. This was the choice seemingly faced by CareMore patients during the

3  2018 Open Enrollment when they received the misleading communications from

4  ALLCARE. Patients, especially senior patients, can experience distress when faced

5  with potential disruption of their relationship with their treating physician.

6    54.    Loss of physicians from an IPA network is likely to result in a reduction

7  in total number of members covered by that IPA, as patients who value their ongoing

8  physician relationships are more likely to stay with their current physician and change

9  IPAs as opposed to being re-assigned to a new physician with whom they are

10  unfamiliar. Decisions such as these are the reason CVMG's membership has declined

11  as a result of ALLCARE's actions.

12    55.    CVMG has been contacted by physicians and patients impacted by

13  ALLCARE's actions. Patients have contacted CVMG to express concern about the

14  impact this change will have on their medical care and to get assistance in

15  understanding how their physicians' termination of the contract with CVMG will

16  impact them and the choices they have in the future. Physicians have received calls

17  from patients concerned about having to change doctors and/or expressing concern

18  about a possible disruption in care as a result of the termination of specific

19  physicians' contracts with CVMG.

20    56.    ALLCARE's actions are an effort to harm CVMG and/or to ensure that

21  CVMG is not a suitable partner for health plans such as CareMore, in part by

22  reducing CVMG's network adequacy. ALLCARE's actions are also an effort to

23  ensure that CareMore does not have a viable IPA other than ALLCARE with whom

24  to contract and/or harm CareMore and any IPA that contracts with CareMore, such

25  as CVMG.

26    57.    ALLCARE's actions are detrimental and cause harm to the physicians

27  and patients in Stanislaus County.

28  ///

DOLL AMIR & ELEY LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOLL AMIR & ELEY LLP

**FIRST CAUSE OF ACTION**

**(Interference with Contract (Physicians))**

58.    Plaintiff hereby realleges and incorporates by this reference each of the preceding paragraphs as if fully set forth herein.

59.    At all relevant times, CVMG is and was a party to a contract between CVMG and each physician within its Physician Network and/or its Primary Care Physician Network.

60.    ALLCARE had knowledge of CVMG's contracts with physicians.

61.    In or about February or March 2019, ALLCARE took certain wrongful actions described above which were intended to coerce physicians to terminate their contracts with CVMG and which actions did in fact cause physicians to terminate their contracts with CVMG or to not affiliate with CVMG.

62.    As a separate and independent wrongful act, Defendant's threat to refuse to pay earned annual contractual performance bonuses to physicians in the future unless they terminate their contracts with CVMG, while still demanding but not paying for the same performance, is a breach of Defendant's contract(s) with those physicians and/or a breach of the implied covenant of good faith and fair dealing inherent in that contract.[1]   This breach is coercive in light of the actual and/or perceived severe harm those physicians would suffer if they refused ALLCARE's demand, including but not limited to impacts to their livelihood and personal and business finances, impacts to the livelihoods of their staff, and the professional cost involved in severing relationships with patients who are contracted with CVMG.

63.    By its actions, ALLCARE interfered in CVMG's contracts with physicians.

64.    Defendant engaged in this conduct with the intent to interfere with CVMG's contracts with its Physician Network with the intent of dissuading

---

[1] ALLCARE and/or its agents also disparaged and defamed CVMG by communicating to physicians that CVMG would no longer be in existence as of July 2019.

14

1    physicians from continuing to be affiliated, or refrain from joining, CVMG, and to

2    hereby deny CVMG the benefits of these contracts.

3         65.    As a direct and proximate result of Defendant's actions, Defendant has

4    and will imminently cause CVMG damages including but not limited to lost

5    contracts, lost revenue, increased operating costs, costs to cover and administrative

6    expense which are reasonably anticipated to occur, all in an amount to be proved at

7    trial.

8         66.    Defendant and its agents took these actions intentionally and maliciously

9    such that the imposition of punitive damages pursuant to Civil Code Section 3294 is

10   warranted and hereby requested.

11        67.    CVMG requests all equitable relief without limitation, including but not

12   limited to temporary, preliminary, and permanent injunctions enjoining Defendant's

13   interference.

14                      **SECOND CAUSE OF ACTION**

15                 **(Interference with Contract (Members))**

16        68.    Plaintiff hereby realleges and incorporates by this reference each of the

17   preceding paragraphs as if fully set forth herein.

18        69.    At all relevant times, CVMG is and was a party to a contract between

19   CVMG and each of its members.

20        70.    ALLCARE had knowledge of CVMG's contracts with members.

21        71.    In or about February or March 2019, ALLCARE took certain wrongful

22   actions described above which were intended to coerce physicians to terminate their

23   contracts with CVMG and which actions did in fact cause physicians to terminate

24   their contracts with CVMG or to not affiliate with CVMG.

25        72.    These same wrongful actions were also intended to induce patients to

26   terminate their contracts with CVMG and did in fact cause patient members to

27   terminate their contracts with CVMG.

28        73.    As a separate and independent wrongful act, Defendant's threat to refuse

DOLL AMIR & ELEY LLP

to pay earned annual contractual performance bonuses to physicians in the future unless they terminate their contracts with CVMG, while still demanding but not paying for the same performance, is a breach of Defendant's contract(s) with those physicians and/or a breach of the implied covenant of good faith and fair dealing inherent in that contract. This breach is coercive in light of the actual and/or perceived severe harm those physicians would suffer if they refused ALLCARE's demand, including but not limited to impacts to their livelihood and personal and business finances, impacts to the livelihoods of their staff, and the professional cost involved in severing relationships with patients who are contracted with CVMG.

74. By its actions, ALLCARE interfered in CVMG's contracts with patient members.

75. Defendant engaged in this conduct with the intent to interfere with CVMG's contracts with its patient members.

76. As a direct and proximate result of Defendant's actions, Defendant has and will imminently cause CVMG damages including but not limited to lost contracts, lost revenue, increased operating costs, costs to cover and administrative expense which are reasonably anticipated to occur, all in an amount to be proved at trial.

77. Defendant and its agents took these actions intentionally and maliciously such that the imposition of punitive damages pursuant to Civil Code Section 3294 is warranted and hereby requested.

78. CVMG requests all equitable relief without limitation, including but not limited to temporary, preliminary, and permanent injunctions enjoining Defendant's interference.

## THIRD CAUSE OF ACTION

### (Interference with Contract (CareMore))

79. Plaintiff hereby realleges and incorporates by this reference each of the preceding paragraphs as if fully set forth herein.

16

DOLL AMIR & ELEY LLP

80.    At all relevant times, CareMore is and was a party to a contract between CareMore and each of its members.

81.    ALLCARE had knowledge of CareMore's contracts with members.

82.    In or about October through December 2018 ALLCARE sent CareMore patient members the inaccurate and misleading Plan Switch Letters which were intended to induce patients to terminate their contracts with CareMore and which actions did in fact cause patient members to terminate their contracts with CareMore.

83.    As a separate and independent wrongful act, Defendant violated statutory requirements regarding communications with patients in its Plan Switch Letters, including but not limited to Health and Safety Code section 1673.65(f).

84.    By its actions, ALLCARE interfered in CareMore's contracts with patient members.

85.    By its actions, ALLCARE interfered in CVMG's contract with CareMore.  First, because ALLCARE's actions decreased the total number of CareMore members, it correspondingly decreased the number of members available to CVMG pursuant to a contract with CareMore.  In addition, CareMore is closely monitoring CVMG's network adequacy given the impacts of ALLCARE's actions on CVMG's network.  The decrease in network adequacy affected the contract between CareMore and CVMG.

86.    Defendant engaged in this conduct with the intent to interfere with CareMore's contracts with its patient members and, correspondingly, intended to interfere with CareMore's contracts with other IPAs such as CVMG.

87.    As a direct and proximate result of Defendant's actions, Defendant has and will imminently cause CVMG damages including but not limited to lost contracts, lost revenue, increased operating costs, costs to cover and administrative expense which are reasonably anticipated to occur, all in an amount to be proved at trial.

88.    Defendant and its agents took these actions intentionally and maliciously

17

DOLL AMIR & ELEY LLP

1   such that the imposition of punitive damages pursuant to Civil Code Section 3294 is

2   warranted and hereby requested.

3       89.    CVMG requests all equitable relief without limitation, including but not

4   limited to temporary, preliminary, and permanent injunctions enjoining Defendant's

5   interference.

6   **FOURTH CAUSE OF ACTION**

7   **(Interference with Contract (Health Plans))**

8       90.    Plaintiff hereby realleges and incorporates by this reference each of the

9   preceding paragraphs as if fully set forth herein.

10       91.    At all relevant times, CVMG is and was a party to its contracts with

11   health plans.

12       92.    ALLCARE had knowledge of CVMG's contracts with health plans.

13       93.    In or about February or March 2019, ALLCARE took certain wrongful

14   actions described above which were intended to coerce physicians to terminate their

15   contracts with CVMG and which actions did in fact cause physicians to terminate

16   their contracts with CVMG or to not affiliate with CVMG.

17       94.    These same wrongful actions were also intended to induce patients to

18   terminate their contracts with CVMG and did in fact cause patient members to

19   terminate their contracts with CVMG.

20       95.    As a separate and independent wrongful act, Defendant's threat to refuse

21   to pay earned annual contractual performance bonuses to physicians in the future

22   unless they terminate their contracts with CVMG, while still demanding but not

23   paying for the same performance, is a breach of Defendant's contract(s) with those

24   physicians and/or a breach of the implied covenant of good faith and fair dealing

25   inherent in that contract.  This breach is coercive in light of the actual and/or

26   perceived severe harm those physicians would suffer if they refused ALLCARE's

27   demand, including but not limited to impacts to their livelihood and personal and

28   business finances, impacts to the livelihoods of their staff, and the professional cost

18

1   involved in severing relationships with patients who are contracted with CVMG.

2      96.   Defendant's actions have negatively impacted CVMG's existing

3   relationships with health plans and its negotiations with new health plans.

4      97.   By its actions, ALLCARE interfered in CVMG's contracts with health

5   plans.  Health Plans with whom CVMG is contracted are monitoring CVMG's

6   network adequacy given the impacts of ALLCARE's actions on that network.

7      98.   Defendant engaged in this conduct with the intent to interfere with

8   CVMG's contracts with its health plans.

9      99.   As a direct and proximate result of Defendant's actions, Defendant has

10  and will imminently cause CVMG damages including but not limited to lost

11  contracts, lost revenue, increased operating costs, costs to cover and administrative

12  expense which are reasonably anticipated to occur, all in an amount to be proved at

13  trial.

14     100.  Defendant and its agents took these actions intentionally and maliciously

15  such that the imposition of punitive damages pursuant to Civil Code Section 3294 is

16  warranted and hereby requested.

17     101.  CVMG requests all equitable relief without limitation, including but not

18  limited to temporary, preliminary, and permanent injunctions enjoining Defendant's

19  interference.

**FIFTH CAUSE OF ACTION**

**(Interference with prospective economic advantage (Physicians))**

22     102.  Plaintiff hereby realleges and incorporates by this reference each of the

23  preceding paragraphs as if fully set forth herein.

24     103.  CVMG is or was a party to many physician contracts. Each contract

25  represents an ongoing relationship with a physician providing care to CVMG's

26  members, and has an economic benefit to CVMG. These relationships have been in

27  existence for a period of years in almost all cases and would have resulted in an

28  ongoing economic benefit to CVMG.

DOLL AMIR & ELEY LLP

19
FIRST AMENDED COMPLAINT

104.   Defendant and its agents were aware of CVMG's contracts with its physicians and their economic relationships.

105.   In or about February or March 2019, ALLCARE took certain wrongful actions described above which were intended to coerce physicians to terminate their contracts with CVMG and which actions did in fact cause physicians to terminate their contracts with CVMG or to not affiliate with CVMG.

106.   In taking the actions alleged herein, Defendants intended to and did actually interfere with CVMG's relationships and contracts with its physicians with the intent to harm CVMG's business.

107.   As a separate and independent wrongful act, Defendant's threat to refuse to pay earned annual contractual performance bonuses to physicians in the future unless they terminate their contracts with CVMG, while still demanding but not paying for the same performance, is a breach of Defendant's contract(s) with those physicians and/or a breach of the implied covenant of good faith and fair dealing inherent in that contract.  This breach is coercive in light of the actual and/or perceived severe harm those physicians would suffer if they refused ALLCARE's demand, including but not limited to impacts to their livelihood and personal and business finances, impacts to the livelihoods of their staff, and the professional cost involved in severing relationships with patients who are contracted with CVMG.

108.   As a direct and proximate result of Defendant's conduct as alleged herein, approximately 60% of physicians contracted with CVMG have terminated/provided a notice of termination of their relationships with CVMG.

109.   Defendant's conduct, as alleged herein, was a substantial factor in causing the loss of these physician relationships. Loss of these relationships has or will imminently cause CVMG damages including, but not limited to, lost contracts, lost revenue, increased operating costs, costs to cover and administrative expense, all in an amount to be proved at trial.

110.   As a direct and proximate result of Defendant's actions, Defendant has

DOLL AMIR & ELEY LLP

20

1  and will imminently cause CVMG damages which are reasonably anticipated to

2  occur, all in an amount to be proved at trial.

3      111.   Defendant's actions were malicious and oppressive, such that the

4  imposition of punitive and exemplary damages is warranted, pursuant to Civil Code

5  Section 3294.

6      112.   CVMG requests all equitable relief without limitation, including but not

7  limited to temporary, preliminary, and permanent injunctions enjoining Defendant's

8  interference.

9                        **SIXTH CAUSE OF ACTION**

10     **(Interference with prospective economic advantage (Members))**

11     113.   Plaintiff hereby realleges and incorporates by this reference each of the

12  preceding paragraphs as if fully set forth herein.

13     114.   CVMG is or was a party to many physician contracts. Each contract

14  represents an ongoing relationship with a physician providing care to CVMG's

15  members, and has an economic benefit to CVMG. These relationships have been in

16  existence for a period of years in almost all cases and would have resulted in an

17  ongoing economic benefit to CVMG.

18     115.   CVMG is or was a party to many contracts with patient members.  Each

19  contract represents an ongoing relationship with a patient member providing care to

20  those members, and has an economic benefit to CVMG. These relationships have

21  been in existence and would have resulted in an ongoing economic benefit to CVMG.

22     116.   Defendant and its agents were aware of CVMG's contracts with its

23  physicians and their economic relationships.

24     117.   Defendant and its agents were aware of CVMG's contracts with its

25  patient members and their economic relationships.

26     118.   In or about February or March 2019, ALLCARE took certain wrongful

27  actions described above which were intended to coerce physicians to terminate their

28  contracts with CVMG and which actions did in fact cause physicians to terminate

DOLL AMIR & ELEY LLP

21

FIRST AMENDED COMPLAINT

1 their contracts with CVMG or to not affiliate with CVMG.

2       119.   These same wrongful actions were also intended to induce patients to

3 terminate their contracts with CVMG and did in fact cause patient members to

4 terminate their contracts with CVMG.

5       120.   In taking the actions alleged herein, Defendants intended to and did

6 actually interfere with CVMG's relationships and contracts with its patient members,

7 all with the intent to harm CVMG's business.

8       121.   As a separate and independent wrongful act, Defendant's threat to refuse

9 to pay earned annual contractual performance bonuses to physicians in the future

10 unless they terminate their contracts with CVMG, while still demanding but not

11 paying for the same performance, is a breach of Defendant's contract(s) with those

12 physicians and/or a breach of the implied covenant of good faith and fair dealing

13 inherent in that contract.  This breach is coercive in light of the actual and/or

14 perceived severe harm those physicians would suffer if they refused ALLCARE's

15 demand, including but not limited to impacts to their livelihood and personal and

16 business finances, impacts to the livelihoods of their staff, and the professional cost

17 involved in severing relationships with patients who are contracted with CVMG.

18       122.   As a direct and proximate result of Defendant's conduct as alleged

19 herein, approximately 60% of physicians contracted with CVMG have

20 terminated/provided a notice of termination of their relationships with CVMG.

21       123.   As a direct and proximate result of Defendant's conduct as alleged

22 herein, a significant percentage of patient members have also terminated their

23 contracts with CVMG.

24       124.   Defendant's conduct, as alleged herein, was a substantial factor in

25 causing the loss of these patient member relationships. Loss of these relationships has

26 or will imminently cause CVMG damages including, but not limited to, lost contracts,

27 lost revenue, increased operating costs, costs to cover and administrative expense, all

28 in an amount to be proved at trial.

DOLL AMIR & ELEY LLP

125.   As a direct and proximate result of Defendant's actions, Defendant has and will imminently cause CVMG damages which are reasonably anticipated to occur, all in an amount to be proved at trial.

126.   Defendant's actions were malicious and oppressive, such that the imposition of punitive and exemplary damages is warranted, pursuant to Civil Code Section 3294.

127.   CVMG requests all equitable relief without limitation, including but not limited to temporary, preliminary, and permanent injunctions enjoining Defendant's interference.

## SEVENTH CAUSE OF ACTION

### (Interference with prospective economic advantage (CareMore))

128.   Plaintiff hereby realleges and incorporates by this reference each of the preceding paragraphs as if fully set forth herein.

129.   CareMore is a party to contracts with members.

130.   Defendant and its agents were aware of CareMore's contracts with members and their economic relationship.

131.   Defendant and its agents were aware of CareMore's need to contract with another IPA and/or individual physicians to maintain its network after CareMore's contract with ALLCARE expires.

132.   In or about October through December 2018 ALLCARE sent CareMore patient members the inaccurate and misleading Plan Switch Letters which were intended to induce patients to terminate their contracts with CareMore and which actions did in fact cause patient members to terminate their contracts with CareMore.

133.   Defendant and its agents took such actions to retain members and to prevent CareMore and any other IPA from contracting with those members.

134.   In taking the actions alleged herein, Defendants intended to and did actually interfere with CareMore's relationships and contracts with its members and any future relationship between CareMore and another IPA such as CVMG.

DOLL AMIR & ELEY LLP

FIRST AMENDED COMPLAINT

DOLL AMIR & ELEY LLP

135. As a separate and independent wrongful act, Defendant violated statutory requirements regarding communications with patients in its Plan Switch Letters, including but not limited to Health and Safety Code section 1673.65(f).

136. As a direct and proximate result of Defendant's conduct as alleged herein, a significant percentage of patient members have terminated their contracts with CareMore, which will impact any future contract between CareMore and CVMG.

137. As a direct and proximate result of Defendant's conduct as alleged herein, CVMG's potential contractual relationships with CareMore members have been impacted.

138. Defendant's conduct, as alleged herein, was a substantial factor in causing the loss of these potential contractual relationships with CareMore members. Loss of these relationships has or will imminently cause CVMG damages including, but not limited to, lost contracts, lost revenue, increased operating costs, costs to cover and administrative expense, all in an amount to be proved at trial.

139. As a direct and proximate result of Defendant's actions, Defendant has and will imminently cause CVMG damages which are reasonably anticipated to occur, all in an amount to be proved at trial.

140. Defendant's actions were malicious and oppressive, such that the imposition of punitive and exemplary damages is warranted, pursuant to Civil Code Section 3294.

141. CVMG requests all equitable relief without limitation, including but not limited to temporary, preliminary, and permanent injunctions enjoining Defendant's interference.

### EIGHTH CAUSE OF ACTION

### (Interference with prospective economic advantage (Health Plans))

142. Plaintiff hereby realleges and incorporates by this reference each of the preceding paragraphs as if fully set forth herein.

FIRST AMENDED COMPLAINT

DOLL AMIR & ELEY LLP

1    143.   CVMG is a party to contracts with health plans. Each existing contract
2    represents an ongoing relationship with a health plan providing care to the health
3    plan's members, and has an economic benefit to CVMG. These relationships have
4    been in existence for some time and would result in an ongoing economic benefit to
5    CVMG.

6    144.   Additional health plans have engaged in contract negotiations with
7    CVMG. If those health plans were to contract with CVMG, those contracts would
8    have an economic benefit to CVMG.

9    145.   Defendant and its agents were aware of CVMG's contracts with health
10   plans and its potential contracts with new health plans, including the possibility of a
11   contract between CVMG and CareMore.

12   146.   In or about February or March 2019, ALLCARE took certain wrongful
13   actions described above which were intended to coerce physicians to terminate their
14   contracts with CVMG and which actions did in fact cause physicians to terminate
15   their contracts with CVMG or to not affiliate with CVMG.

16   147.   These same wrongful actions were also intended to induce patients to
17   terminate their contracts with CVMG and did in fact cause patient members to
18   terminate their contracts with CVMG.

19   148.   In taking the actions alleged herein, Defendants intended to and did
20   actually interfere with CVMG's relationships and contracts with health plans, all with
21   the intent to harm CVMG's business.

22   149.   As a separate and independent wrongful act, Defendant's threat to refuse
23   to pay earned annual contractual performance bonuses to physicians in the future
24   unless they terminate their contracts with CVMG, while still demanding but not
25   paying for the same performance, is a breach of Defendant's contract(s) with those
26   physicians and/or a breach of the implied covenant of good faith and fair dealing
27   inherent in that contract. This breach is coercive in light of the actual and/or
28   perceived severe harm those physicians would suffer if they refused ALLCARE's

DOLL AMIR & ELEY LLP

1  demand, including but not limited to impacts to their livelihood and personal and

2  business finances, impacts to the livelihoods of their staff, and the professional cost

3  involved in severing relationships with patients who are contracted with CVMG.

4      150.  As a direct and proximate result of Defendant's conduct as alleged

5  herein, approximately 60% of physicians contracted with CVMG have

6  terminated/provided a notice of termination of their relationships with CVMG.

7      151.  As a direct and proximate result of Defendant's conduct as alleged

8  herein, a significant percentage of patient members have terminated their contracts

9  with CVMG.

10      152.  As a direct and proximate result of Defendant's conduct as alleged

11  herein, CVMG's network adequacy has decreased.

12      153.  As a direct and proximate result of Defendant's conduct as alleged

13  herein, CVMG's contractual and potential contractual relationships with health plans

14  have been impacted. Health Plans with whom CVMG is contracted and with whom

15  CVMG may contract are monitoring CVMG's network adequacy given the impacts of

16  ALLCARE's actions on that network.

17      154.  CVMG is in danger of losing and/or experiencing modifications to

18  contracts with existing health plans and/or being unable to contract with new health

19  plans in the future.  In the event Defendant's conduct, as alleged herein, is not

20  remedied, any such losses would be directly attributable to Defendant's actions.  Loss

21  of these relationships would cause CVMG damages including, but not limited to, lost

22  contracts, lost revenue, increased operating costs, costs to cover and administrative

23  expense, all in an amount to be proved at trial.

24      155.  As a direct and proximate result of Defendant's actions, Defendant has

25  and will imminently cause CVMG damages which are reasonably anticipated to

26  occur, all in an amount to be proved at trial.

27      156.  Defendant's actions were malicious and oppressive, such that the

28  imposition of punitive and exemplary damages is warranted, pursuant to Civil Code

1 | Section 3294.

2 |    157.  CVMG requests all equitable relief without limitation, including but not

3 | limited to temporary, preliminary, and permanent injunctions enjoining Defendant's

4 | interference.

5 | **NINTH CAUSE OF ACTION**

6 | **(Unlawful business practices, pursuant to Business & Prof. Code §17200)**

7 |    158.  Plaintiff hereby realleges and incorporates by this reference each of the

8 | preceding paragraphs as if fully set forth herein.

9 |    159.  Defendant is a corporation doing business as an IPA.

10 |    160.  CVMG is an IPA and corporation operating in the same geographic

11 | region as Defendant and in the same business as Defendant. Both CVMG and

12 | Defendant compete for the same pool of physicians to contract with to build and

13 | maintain their respective Physician Networks.

14 |    161.  Both CVMG and Defendant compete to obtain patient members.

15 |    162.  Both CVMG and Defendant compete for contracts with health plans to

16 | obtain patient membership.

17 |    163.  In the managed care business, the health plan compensates the IPA on a

18 | per member per month basis. The IPA in turn pays its Primary Care Physician

19 | Network physicians who provide the actual services according to its contract,

20 | typically in either fee for service reimbursements or also in a per member per month

21 | arrangement known as "sub-capitation." The IPA's ability to keep the plan member,

22 | highly turns on whether the patient's physician is in the IPA's network.

23 |    164.  Beginning on or about February or March 2019, Defendant ALLCARE,

24 | through its agents and officers including its President, Matthew Coury, told

25 | physicians who are affiliated with both Defendant and CVMG that Defendant would

26 | not pay any further annual contractual performance bonuses owed to physicians who

27 | were also affiliated with CVMG. For a physician to continue to receive their annual

28 | contractual performance bonus, the physician was required to terminate their contract

1 | with CVMG.

2 | 165.   Defendant's threat to refuse to pay earned annual contractual
3 | performance bonuses to physicians in the future unless they terminate their contracts
4 | with CVMG, while still demanding but not paying for the same performance, is a
5 | breach of Defendant's contract(s) with those physicians.  This breach is coercive in
6 | light of the actual and/or perceived severe harm those physicians would suffer if they
7 | refused ALLCARE's demand, including but not limited to impacts to their livelihood
8 | and personal and business finances, impacts to the livelihoods of their staff, and the
9 | professional cost involved in severing relationships with patients who are contracted
10 | with CVMG.

11 | 166.   Defendant's refusal to pay its annual contractual performance bonus to
12 | those physicians who do not terminate their contracts with CVMG is a breach of
13 | Defendant's contract(s) with those physicians, which breach is and will cause severe
14 | harm in the form of personal hardship and impacts to the livelihood of these
15 | physicians.

16 | 167.   Defendant's refusal to pay its annual contractual performance bonus to
17 | those physicians who do not terminate their contracts with CVMG while also
18 | continuing to demand performance from those physicians results in ALLCARE
19 | receiving valuable services from physicians without providing compensation for those
20 | services in breach of Defendants contract(s) with those physicians.

21 | 168.   Defendant's threats to refuse and refusal to pay its annual contractual
22 | performance bonus to those physicians who do not terminate their contracts with
23 | CVMG is an effort to penalize physicians for refusing to exclusively contract with
24 | ALLCARE and to induce those physicians to terminate their contracts with CVMG.

25 | 169.   Defendant's threats to refuse and refusal to pay its annual contractual
26 | performance bonus to those physicians who do not terminate their contracts with
27 | CVMG is an effort by ALLCARE to assert a contractual right that ALLCARE does
28 | not have and/or to enforce an unlawful provision in such contract.

DOLL AMIR & ELEY LLP

170.   Defendant violated statutory requirements regarding communications with patients in its Plan Switch Letters, including but not limited to Health and Safety Code section 1673.65(f).

171.   As a direct and proximate result of Defendant's unlawful conduct, CVMG has and will imminently suffer pecuniary losses including but not limited to lost contracts, lost revenue, increased operating costs, costs to cover and administrative expense, all in an amount to be proved at trial.

172.   As a result of Defendant's conduct, as alleged herein, it has been unjustly enriched including, but not limited to acquiring physician contracts and membership that CVMG otherwise would have retained or acquired, but for Defendant's unlawful conduct.

173.   Standing.  CVMG has standing to commence this action pursuant to Business and Professions Code Section 17200 as it has or imminently will suffer pecuniary loss as a result of Defendant's actions as alleged herein, specifically the loss of a significant portion of its Primary Care Physician Network, increased operating expenses, and/or the loss of capitation fees for members who would be seen by physicians affiliated with CVMG or who were previously covered by the CareMore health plan, but for Defendant's unlawful, unfair and fraudulent practices.

174.   CVMG requests all equitable relief without limitation, including but not limited to disgorgement and restitution, and temporary, preliminary, and permanent injunctions enjoining Defendant's unlawful practices.

## TENTH CAUSE OF ACTION

### (Unfair Business Practices in violation of Bus. & Prof. Code §17200)

175.   Plaintiff hereby realleges and incorporates by this reference each of the preceding paragraphs as if fully set forth herein.

176.   Defendant's threat to refuse to pay earned annual contractual performance bonuses to physicians in the future unless they terminate their contracts with CVMG, while still demanding but not paying for the same performance, is a

DOLL AMIR & ELEY LLP

1  breach of Defendant's contract(s) with those physicians.  This breach is coercive in

2  light of the actual and/or perceived severe harm those physicians would suffer if they

3  refused ALLCARE's demand, including but not limited to impacts to their livelihood

4  and personal and business finances, impacts to the livelihoods of their staff, and the

5  professional cost involved in severing relationships with patients who are contracted

6  with CVMG.

7      177.   Defendant's refusal to pay its annual contractual performance bonus to

8  those physicians who do not terminate their contracts with CVMG is a breach of

9  Defendant's contract(s) with those physicians, which breach is and will cause severe

10  harm in the form of personal hardship and impacts to the livelihood of these

11  physicians.

12      178.   Defendant's refusal to pay its annual contractual performance bonus to

13  those physicians who do not terminate their contracts with CVMG while also

14  continuing to demand performance from those physicians results in ALLCARE

15  receiving valuable services from physicians without providing compensation for those

16  services in breach of Defendants contract(s) with those physicians.

17      179.   Defendant's threats to refuse and refusal to pay its annual contractual

18  performance bonus to those physicians who do not terminate their contracts with

19  CVMG is an effort to penalize physicians for refusing to exclusively contract with

20  ALLCARE and to induce those physicians to terminate their contracts with CVMG.

21      180.   Defendant's threats to refuse and refusal to pay its annual contractual

22  performance bonus to those physicians who do not terminate their contracts with

23  CVMG is an effort by ALLCARE to assert a contractual right that ALLCARE does

24  not have and/or to enforce an unlawful provision in such contract.

25      181.   Defendant violated statutory requirements regarding communications

26  with patients in its Plan Switch Letters, including but not limited to Health and Safety

27  Code section 1673.65(f).

28      182.   In taking the unfair actions alleged herein, ALLCARE, has, is, and will

DOLL AMIR & ELEY LLP

1   imminently unjustly benefit from its unfair conduct, including, but not limited to,

2   from capitation payments from plans for physician services by physicians who would

3   otherwise affiliate or continue to affiliate with CVMG but for Defendant's unfair

4   competition and/or from capitation payments from plans for services provided to

5   former CareMore members.

6       183.   In taking the actions alleged herein, Defendant has unfairly competed

7   with CVMG. Defendant's conduct, as alleged, offends the policies of free competition

8   and free trade, and significantly threatens or harms competition.

9       184.   Defendant's conduct offends public policy in favor of encouraging and

10  not restricting patient choice as to physicians and/or health plans.  ALLCARE's

11  actions in pressuring physicians to terminate their contract with CVMG or suffer

12  serious financial consequences are immoral, unethical, oppressive and unscrupulous.

13  Furthermore, these actions are substantially injurious to consumers of health care

14  services in Stanislaus County.

15      185.   ALLCARE's actions in misleading CareMore members by its Plan

16  Switch Letter are immoral, unethical, oppressive and unscrupulous and were

17  substantially injurious to CareMore members and to CareMore and CVMG.

18      186.   CVMG requests all equitable relief without limitation, including but not

19  limited to disgorgement and restitution, and temporary, preliminary, and permanent

20  injunctions enjoining Defendant's unfair practices.

21                   **ELEVENTH CAUSE OF ACTION**

22   **(Fraudulent business practices, pursuant to Business & Prof. Code §17200)**

23      187.   Plaintiff hereby realleges and incorporates by this reference each of the

24  preceding paragraphs as if fully set forth herein.

25      188.   Defendant violated statutory requirements regarding communications

26  with patients in its Plan Switch Letters, including but not limited to Health and Safety

27  Code section 1673.65(f).

28      189.   These Plan Switch Letters to patients were inaccurate and misleading.

DOLL AMIR & ELEY LLP

190.    Members of the public, namely recipients of these Plan Switch Letters, were likely to be and were in fact deceived by the Plan Switch Letters.

191.    Recipients of these Plan Switch Letters relied upon the statements made in those letters to make changes to their health plans during Open Enrollment 2018. Patient members made these changes because of the misleading Plan Switch Letters that implied the patients needed to make that change immediately in order to continue to be cared for by physicians who are contracted with ALLCARE.

192.    As a direct and proximate result of Defendant's conduct, CVMG has and will imminently suffer pecuniary losses including but not limited to lost member contracts which CVMG otherwise would have acquired, lost revenue and more.

193.    As a result of Defendant's conduct, as alleged herein, it has been unjustly enriched including, but not limited to acquiring patient membership that CVMG otherwise would have acquired, but for Defendant's unlawful conduct.

194.    CVMG requests all equitable relief without limitation, including but not limited to disgorgement and restitution, and temporary, preliminary, and permanent injunctions enjoining Defendant's fraudulent practices.

### PRAYER

WHEREFORE Plaintiff prays for judgment as follows:

1.      For damages according to proof at time of trial on the first through eighth causes of action;

2.      For punitive damages on the first through eighth causes of action;

3.      For restitution and disgorgement on the ninth, tenth and eleventh causes of action;

4.      For temporary, preliminary and permanent injunctions on all causes of action;

5.      For attorneys' fees to the extent recoverable under state or federal law at time of trial;

///

DOLL AMIR & ELEY LLP

32

FIRST AMENDED COMPLAINT

1    6.    For other such relief as the Court deems just and proper.

2

3    DATED:  July 8, 2019                    DOLL AMIR & ELEY LLP

4

5                                           By: /s/ Krista Hernandez
6                                              MICHAEL M. AMIR
                                               KRISTA HERNANDEZ
7                                           Attorneys for Plaintiff,
                                            Central Valley Medical Group, Inc.

8

9    ## REQUEST FOR A JURY TRIAL

10   Plaintiff Central Valley Medical Group, Inc. requests a jury trial.

11

12   DATED:  July 8, 2019                    DOLL AMIR & ELEY LLP

13

14                                          By: /s/ Krista Hernandez
15                                             MICHAEL M. AMIR
                                               KRISTA HERNANDEZ
16                                          Attorneys for Plaintiff,
                                            Central Valley Medical Group, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

DOLL AMIR & ELEY LLP

FIRST AMENDED COMPLAINT

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is **725 S. Figueroa Street, Suite 3275, Los Angeles, California 90017**.

On July 8, 2019, I served the foregoing document described as **FIRST AMEDNED COMPLAINT** on the interested parties in this action by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ **BY REGULAR MAIL:** I deposited such envelope in the mail at 725 S. Figueroa Street, Suite 3275, Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**·BY FACSIMILE MACHINE:** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

☐ **BY OVERNIGHT DELIVERY:** I caused such documents to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressees. The envelope or package was deposited with delivery fees thereon fully prepaid.

☐ **BY ELECTRONIC MAIL:** I transmitted a true copy of said document(s) via electronic mail, and no error was reported. Said email was directed as indicated on the service list.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ **BY CM/ECF:** I electronically transmitted a true copy of said document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the aforementioned CM/ECF registrants.

I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 8, 2019, at Los Angeles, California.

*/s/ Cesar Ramirez*
Cesar Ramirez

DOLL AMIR & ELEY LLP

1
PROOF OF SERVICE

**SERVICE LIST**

James Maxwell Cooper
Michael A. Gawley
KESSENICK GAMMA & FREE, LLP
44 Montgomery Street, Suite 3880
San Francisco, CA 94104
Tel:(415) 362-9400
Fax: (415) 362-9401
Email: mcooper@kgf-lawfirm.com
Email: mgawley@kgf-lawfirm.com

*Attorneys for Defendant*
*Independent Physician*
*Associates Medical Group, Inc.*
*dba Allcare IPA*

DOLL AMIR & ELEY LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE